In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4238

AARON B. SCRUGGS,

*Petitioner-Appellant,*

*v.*

D. BRUCE JORDAN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 05 C 180—**Allen Sharp**, *Judge.*

ARGUED FEBRUARY 23, 2007—DECIDED MAY 7, 2007

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* Aaron Scruggs, an inmate in Indiana state prison, was sanctioned by the prison's Conduct Adjustment Board ("CAB") after he struck another inmate with his cane in order to stop that inmate from stabbing a third inmate. Scruggs filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the Northern District of Indiana alleging due process and equal protection violations arising from his disciplinary hearing. The district court denied the petition on the merits and we affirm.

## I. BACKGROUND

On December 14, 2004, Scruggs witnessed inmate Marty Robbins stabbing inmate Richard Carrizales with a shank. Rather than summon a guard to break up the fight, Scruggs struck Robbins over the back with his walking cane. After a couple of hard hits from Scruggs, Robbins stopped stabbing Carrizales and threw the shank out the window. Scruggs admits to hitting Robbins and contends that he did so in order to prevent further injury to Carrizales. This version of events was corroborated by witnesses and surveillance video.

A formal Report of Conduct charging Scruggs with battery was issued the following day. In preparation for his upcoming hearing, Scruggs requested several types of evidence, including live eye-witness testimony, access to the surveillance video, medical reports, and any other evidence pertaining to his defense. Prison authorities did not allow Scruggs to call live witnesses at his hearing, but written statements were taken from all of Scruggs's witnesses. The surveillance video was reviewed outside of Scruggs's presence, though he did have access to a written form reviewing the contents of the video. Scruggs was also denied access to medical reports and photographs of Robbins and Carrizales.

The CAB found Scruggs guilty of battery, took away ninety days of his earned credit time, demoted him from credit-earning class I to credit-earning class II, and confined him to three months of disciplinary segregation. A brief report of the disciplinary hearing was issued indicating that the evidence the CAB relied on included: staff reports, the statement of the offender, evidence from witnesses, and physical evidence which included a Polaroid picture. The form also indicated that the reasons for the sanctions imposed included the seriousness and the nature of the offense. The section entitled "Reason

for decision" states simply: "[O]ffender admitted to striking [Robbins] 'a couple of frantic hard hits' w/ his cane. [Robbins] summarily hospitalized." Rc. 8-10, p. 13.

Scruggs appealed the CAB's decision to the Facility Head, arguing that the CAB improperly denied him access to certain evidence, that the CAB's verdict was contrary to the evidence, and that the CAB failed to properly consider his defense in rendering its decision and imposing punishment. The decisions of the CAB and Facility Head were upheld on Scruggs's final administrative appeal to the Indiana Department of Corrections.

Having exhausted state administrative procedures, Scruggs filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the Northern District of Indiana alleging due process and equal protection violations arising from his hearing and racial bias on the part of the CAB.[1] The district court denied Scruggs's petition on the merits, holding that he received a meaningful hearing, that the CAB's decision was supported by sufficient evidence, and that he had not demonstrated racial bias on the part of the CAB.

## II. ANALYSIS

We must address four issues on appeal: (1) whether prisoners have a substantive due process right to use violence to defend others; (2) whether Scruggs's procedural due process rights were violated when the CAB denied him access to evidence in support of his defense; (3) whether the CAB's written statement adequately set forth the reasons for its decision in accord with procedural due process; and (4) whether sufficient evidence supported

---

[1] Scruggs does not pursue his equal protection claim or allegations of racial bias on appeal.

the CAB's decision and imposition of punishment. We review the federal district court's denial of a petition for habeas corpus *de novo. Daniels v. Knight*, 476 F.3d 426, 433 (7th Cir. 2007). When reviewing a state court's decision upon a petition for habeas corpus, we grant relief only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d)(1). But "a prison disciplinary board is not a 'court,' and Indiana does not provide for judicial review of conduct board determinations." *Pannell v. McBride*, 306 F.3d 499, 502 (7th Cir. 2002) (per curiam). Thus, § 2254(d)(1) does not apply and we will review the CAB's legal determinations de novo. *Id*.

## A. Due Process Rights of Prisoners

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV, § 1. "There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). Prisoners do maintain due process rights. *Id*. But in order to serve correctional goals and maintain institutional safety, prison officials must necessarily restrict the liberty of the prisoners they house. *See Id*. at 556; *Rowe v. DeBruyn*, 17 F.3d 1047, 1049 (7th Cir. 1994).

While Scruggs has framed his challenge in terms of procedural due process, there is an underlying substantive due process issue that must be addressed before we may proceed. Namely, whether Scruggs had the substantive right to a defense-of-others claim in his prison disciplinary proceedings. Our decision in *Rowe v. DeBruyn* is controlling on this issue. 17 F.3d 1047 (7th Cir. 1994).

In *Rowe,* we considered whether inmates have the substantive right to raise *self*-defense as a complete

defense in prison disciplinary proceedings. We answered that question in the negative. *Id.* Rowe argued, as does Scruggs, that the Indiana statute creating a justification defense for defending one's self or another in the criminal context gives him a substantive constitutional right. *Id.* at 1051-53; *see* Ind. Code Ann. § 35-41-3-2. This argument is misguided; the violation of a state statute simply does not create a substantive federal right. *Colon v. Schneider*, 899 F.2d 660, 672 (7th Cir. 1990). If such a right exists, then it must be found in the Constitution. But, as we noted in *Rowe*, there is no precedent for a fundamental right to self-defense or defense of others in the criminal context, and certainly not in the context of prison disciplinary proceedings. 17 F.3d at 1052. Scruggs cannot establish a substantive due process right to use violence to defend another person.

Even if such a substantive right existed, prison regulations could impinge upon that right if they were "reasonably related to legitimate penological interests." *Id.* at 1051 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone v. Shabazz*, 482 U.S. 342, 347 (1987); *Hadi v. Horn*, 830 F.2d 779, 784 (7th Cir. 1987)). "A right that threatens to undermine prison discipline by encouraging inmates to combat violence with more violence subverts a core prison function of ensuring order and safety within the institution." *Rowe*, 17 F.3d at 1052-53. Such determinations are uniquely suited to the legislature and the executive. "[S]eparation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities." *Id.* at 1050 (quoting *Turner*, 482 U.S. at 85-86). Thus, the prison officials would not be required to accept Scruggs's defense even if there were a substantive right to use violence in defense of others.

*B.  Access to Evidence*

We turn now to the procedural due process arguments that Scruggs has made. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Id.* at 1053 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Prisoners have a liberty interest in their good-time credits and credit-earning class and thus must be afforded due process before prison officials interfere with those rights. *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001); *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir. 1996). Due process requires that prisoners in disciplinary proceedings be given: "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992); *see also Wolff v. McDonnell*, 418 U.S. 539 (1974).

Procedural due process also requires prison disciplinary officials to disclose material exculpatory evidence to the charged offenders. *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). However, prison disciplinary officials need not permit the presentation of irrelevant or repetitive evidence in order to afford prisoners due process in disciplinary proceedings. *Forbes v. Trigg*, 976 F.2d 308, 318 (7th Cir. 1992). Nor are officials required to allow the presentation of evidence that could threaten institutional safety or correctional goals. *Piggie*, 344 F.3d at 677 (citing *Wolff*, 418 U.S. at 566).

Scruggs was not permitted to call live witnesses, but he was allowed to collect and submit the written statements of those witnesses. Rc. 8-10, pp. 5-16. Scruggs also was not permitted to view the surveillance video, but the CAB viewed and considered that evidence and Scruggs was given access to a written report detailing the substance of the video. Rc. 8-12, p. 1. Ultimately, the question before us is whether Scruggs was afforded a fair hearing. To answer this question, we need look no further than one key piece of evidence: Scruggs's confession. Scruggs freely admits that he hit Robbins with his cane. The CAB has not refuted his contention that he did so to protect Carrizales, it has simply decided that punishment is still warranted. Scruggs has no fundamental right to protect others, and prisons must have broad discretion to implement rules assuring the safety of inmates and staff. In this case, prison officials made the determination that no violence by prisoners can be tolerated and imposed the punishment they thought appropriate under the circumstances of this case. It appears that Scruggs had good intentions, but if he wanted to help Carrizales he should have summoned a guard.

Scruggs is familiar with *The Disciplinary Code for Adult Offenders* which is issued by the Indiana Department of Correction. By the terms of § II.D.1. of that document, each inmate is provided a copy and acknowledges such receipt. Scruggs cited the document himself in his prison appeal. Rc. 8-10, p. 5. While the document sets forth battery as an offense, it provides neither the basis for a self-defense nor a defense of others claim. One may infer that the Indiana Department of Correction intended not to provide for one. Even more tellingly, Scruggs himself was made aware of this policy during the disciplinary process. In a letter he penned during his prison appeals process, Scruggs stated: "The CAB Board or head, Holbrook, told me, he, had no choose in the matter, as I admitted that I hit Robbin's with

my cane to stop his attack on Carrizales, therefore, I was guilty of assault, and gave me 60 days segregation; 90 days loss of good time, and reduced to time class 2." Rc. 8-8, p.3 (verbatim recitation). The CAB had thus informed Scruggs verbally that it had a policy against violence, regardless of the prisoner's good intentions.

Scruggs committed a class A offense: "Committing battery upon another person, with a weapon . . . or inflicting serious injury." Indiana Department of Correction, *The Disciplinary Code for Adult Offenders*, Appx. 1. Once prison officials decided, as was within their power, that preventing violence against a third party is not a defense for a prisoner who has used violence himself, the evidentiary concerns that Scruggs has raised disappear. The CAB was free to accept Scruggs's version of events and still determine that punishment was appropriate. Any evidence Scruggs wished to offer served only to corroborate and duplicate the evidence that the CAB had already accepted. Scruggs's due process rights were not violated when the CAB denied him access to live witnesses, the surveillance video, or prison medical records because the CAB had accepted Scruggs's own version of events and such evidence was merely repetitive.

## C. Adequate Written Statement

Due process requires that an inmate subject to disciplinary action is provided "a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Forbes*, 976 F.2d at 318 (quoting *Wolff*, 418 U.S. at 564-65). Written statements ensure both administrative accountability and meaningful review. *Chavis v. Rowe*, 643 F.2d 1281, 1287 (7th Cir. 1981). The written statement requirement, however, is not onerous. *See, e.g.*, *Pardo v. Hosier*, 946 F.2d 1278, 1284 (7th Cir. 1991); *Culbert v. Young*, 834 F.2d 624, 629 (7th

Cir. 1987); *Saenz v. Young*, 811 F.2d 1172, 1173-74 (7th Cir. 1987). The statement need only illuminate the evidentiary basis and reasoning behind the decision. *Forbes*, 976 F.2d at 318; *Saenz*, 811 F.2d at 1173-74.

We have repeatedly upheld the sufficiency of written statements that indicate only what evidence was relied on to make the decision, and why. *Saenz*, 811 F.2d at 1173-74 ("Officer Fabry's written statement supports the finding of guilt that an attempt was made by inmate Saenz to commit battery upon the [other] inmate."); *Culbert*, 834 F.2d at 627 (Guilt based "on statements in C.R. [conduct report] by Staff in guilt finding that inmate was disrespectful [and] caused a disruption by his actions.").

In Scruggs's case, the CAB indicated what types of evidence it used to make its decision, and explained that Scruggs "admitted to striking [Robbins] 'a couple of frantic hard hits' w/ his cane," and that Robbins was "summarily hospitalized." App. Br. 25. This statement demonstrates that the CAB relied on Scruggs's admission in making its determination, as well as the severity of the injuries he inflicted on Robbins. As the CAB has accepted Scruggs's own version of events, it does not need to further explain the evidentiary basis for its ruling. The written statement issued by the CAB was sufficient to meet the demands of due process.

*D.   Sufficiency of Evidence*

In addition to procedural safeguards, the disciplinary decision must be supported by at least "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). While this evidence must bear some indicia of reliability, once the meager threshold has been crossed our inquiry ends and we will not reverse the

disciplinary board's decision. *Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989). Indeed, we need only consider Scruggs's exculpatory evidence to the extent that it undermines the reliability of the evidence relied upon by the CAB. *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996).

As the main evidence relied upon by the CAB was Scruggs's own admission, and as the CAB was not required to accept that protecting Carrizales was a defense that could shield Scruggs from the battery charge, the evidence was clearly sufficient to sustain the charge against Scruggs.

## III. CONCLUSION

For the aforementioned reasons, the judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*
