NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted June 11, 2008*
Decided June 12, 2008

**Before**

WILLIAM J. BAUER,  *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 07-2861

| | |
|---|---|
| SHAVAUGHN WILSON-EL, | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Southern District of |
| | Indiana, Terre Haute Division. |
| *v.* | |
| | No. 2:06-cv-175-RLY-WGH |
| ALAN FINNAN, | |
| *Respondent-Appellee.* | Richard L. Young, |
| | *Judge.* |

**O R D E R**

In August 2004, a prison disciplinary board found Indiana inmate Shavaughn Wilson-El guilty of disorderly conduct.  Two prison officers testified that he used obscene language and kicked his cell door while complaining about the prison food.  Wilson-El maintained that his cell mate was the one who actually kicked the door, but the cell mate

---

* After examining the briefs and the record we have concluded that oral argument is unnecessary.  Thus the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(a)(2).

signed a statement corroborating the officers' testimony and blaming Wilson-El.  The prison punished Wilson-El with a suspended deprivation of 180 days of earned good-time credit, a demotion to a lower credit-earning class, and a written reprimand.  After exhausting prison appellate procedures, Wilson-El sought relief in the district court under 28 U.S.C. § 2254, alleging due process violations during his disciplinary hearing.  The district court denied relief after finding that the hearing satisfied the standards for due process.  On appeal, Wilson-El disputes the district court's finding.  We affirm.

We review the judgment of the district court de novo.  *See Scruggs v. Jordan*, 485 F.3d 934, 938 (7th Cir. 2007).  Wilson-El had a liberty interest in his good-time credits and credit-earning class.  The prison may not revoke them, even through a "suspended" order, without affording him due process.  *See Cochran v. Buss*, 381 F.3d 637, 640-41 (7th Cir. 2004).  In this context due process required that before he was divested of these interests as a result of a disciplinary proceeding he must have received: (1) advance written notice of the claimed violation, at least 24 hours before the hearing; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the disciplinary board of the evidentiary basis and reasons for its action.  *See  Scruggs*, 485 F.3d at 939; *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003).  In addition, the board's ruling must be supported by "some evidence." *See Scruggs*, 485 F.3d at 941; *Lagerstrom*, 463 F.3d at 624; *Piggie*, 344 F.3d at 677.

Wilson-El contends that the board denied him his right to call witnesses.  He sought to question his cell mate, who he claims was the person who actually kicked the door after being denied a food tray.  Although his cell mate provided a statement to the board asserting just the opposite, Wilson-El claims that prison staff coerced his cell mate to write the statement, or forged it themselves.  He sought a continuance to attempt to elicit a recantation from his cell mate, but the board denied that request.  When he sought to call the cell mate without having obtained a recantation, the board refused to let Wilson-El question him because he had already given a statement.  The board's refusal was permissible.  Wilson-El apparently intended to call his cell mate as an adverse witness in an attempt to discredit his earlier statement.  But he did not have a right to confront and cross-examine an adverse witnesses in a prison disciplinary hearing.  *See Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

Wilson-El also argues that the board was not impartial.  First he argues that his case was heard during the same sitting as two other cases, and that could have confused the board about the facts or might have caused the guilt in the other cases to taint the board's opinion on his case.  But Wilson-El presents no evidence of actual confusion or taint beyond

the mere sequential hearing of three cases, so the district court correctly determined that it had no reason to question the board's capability to administrate and decide multiple cases.

Second Wilson-El contends that one board member said he was familiar with the events at issue in Wilson-El's hearing because he was investigating other grievances concerning the same events. Wilson-El argues that the member should have recused himself from the hearing on this basis. Wilson-El's claim is unpersuasive because he presents no documentary or other evidence to support his allegation that a board member made such statements.

Furthermore, even if the board member made such statements, the district court was correct that such familiarity is not enough to affect the impartiality of the board. The board cannot be composed of anyone directly or substantially involved in the underlying events or the investigation of the inmate, *see Piggie*, 342 F.3d at 667, or a witness to the events in question, *see Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002). But mere tangential involvement with the underlying facts is not a problem. *See Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995). According to Wilson-El's own allegations, the board member did not directly participate in or witness the events, and did not investigate Wilson-El's guilt. Thus, Wilson-El has failed to distinguish acquiring tangential awareness through investigating *other* grievances—as allegedly occurred here—from witnessing, involving himself in, or investigating Wilson-El's own conduct. *Cf. Piggie*, 342 F.3d at 666 (board is not biased because of what it learned in other proceedings); *Whitford*, 63 F.3d at 534 (supervisor signing inmate's disciplinary report but not preparing or investigating is not biased).

Next, Wilson-El claims that the evidence against him was insufficient to support a finding of guilt because, he says, the officers' and his cell mate's testimony were false. He repeats his charge that his cell mate's statement was coerced, and further argues that it was impossible for the officers to see beyond the solid door of his cell to determine who was kicking the door or to hear what was being said behind the door. Finally, he contends that the officers were retaliating against him for his prior grievances.

All of these arguments essentially ask this court to reweigh the evidence against him and reassess the Board's credibility determinations, but we show a higher level of deference to the factual determinations of the board. *See Scruggs*, 485 F.3d at 941. The due process requirement that the board's decision be supported by "some evidence" means that once this "meager threshold" is crossed, we will not reverse the decision of the board. *Id*. The board had the testimony of two officers and Wilson-El's cell mate as evidence of Wilson-El's guilt, certainly enough to meet the threshold requirement supporting its finding.

   Wilson El's remaining due-process claims are easily dispatched.  He contends that he was denied video evidence of the altercation.  The board responded to his request for the evidence by noting that it did not exist.  Wilson-El asserts that an unnamed person later informed him that video evidence was available, but he offers no evidence of the source or reliability of this hearsay.  The board was required to disclose material exculpatory evidence to Wilson-El, so long as it exists and does not threaten institutional safety.  *See Scruggs*, 485 F.3d at 939-40; *Piggie*, 344 F.3d at 678.  But having the board's affirmation that there was no video, Wilson-El's unsupported speculation that video evidence exists is not enough to demonstrate that the board failed to disclose the evidence.  *See Piggie*, 344 F.3d at 678.  Wilson-El also claims that the report of his guilty verdict was altered after the fact to include the suspended deprivation of good-credit time, but he has no evidence of this either.  And his contention that his hearing violated several state statutes is a non-starter because relief under § 2254 is only available for violations of federal law.  *See Hill v. Wilson*, 519 F.3d 366, 368-69 (7th Cir. 2008); *Lambert v. Davis*, 449 F.3d 774, 778-79 (7th Cir. 2006).

   Finally, Wilson-El argues that the district court should have held an evidentiary hearing to consider the sufficiency of the evidence and determine if the officer's testimony against him was retaliatory.  On this point, however, the district court was only required to determine if there was an adequate basis in the record on which the board could rest its factual findings, and there was.  There is no factual dispute (based on Wilson-El's actual personal knowledge) that if resolved in his favor would warrant relief, and therefore a hearing was not necessary.  *See Johnson v. Finnan*, 467 F.3d 693, 695-96 (7th Cir. 2006).

                                                                                                  AFFIRMED.