NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 5, 2009[*]
Decided December 7, 2009

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 09-1324

| | |
|---|---|
| JOHN W. PEROTTI, | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | |
| | No. 2:08-cv-305-RLY-WGH |
| HELEN J. MARBERRY, | |
| *Respondent-Appellee.* | Richard L. Young, *Chief Judge.* |

**O R D E R**

Federal prisoner John Perotti lost a total of 80 days' good time after prison authorities concluded that he fought with another inmate and, in a separate incident, swore at a staff member. He petitioned for a writ of habeas corpus, see 28 U.S.C. § 2241, challenging both disciplinary decisions, and the district court dismissed the petition. We affirm the judgment.

The first incident occurred in November 2007. Perotti received an incident report

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2).

charging him with fighting and possessing a weapon. See 28 C.F.R. § 541.13, tbl. 3, Codes 201, 104. The guard who drafted the incident report was not an eyewitness to the altercation, but a surveillance camera captured on tape the confrontation between Perotti and the other inmate. The footage, according to the guard's report, shows the other inmate start the fight by swinging a broomstick at Perotti, who responded with a punch to the face. According to the guard, Perotti then gained control of the broomstick, tossed it over a railing to the floor below, and, after a brief retreat to his cell, chased his antagonist with a shank (a homemade knife) in each hand. When Perotti turned his back momentarily, the other man threw a trash can at him. Another chase ensued, and, according to the reporting guard, Perotti managed to dispose of the shanks in a shower stall just before staff broke up the fight. Perotti suffered bruises, a fracture to his left arm, and lacerations requiring stitches above each eye.

The following month Perotti appeared before a disciplinary hearing officer, who concluded that Perotti had committed the charged acts and sanctioned him with the loss of 27 days of good time for fighting and another 40 days for possessing a weapon. Although a staff member had been appointed to represent Perotti at the hearing, the employee did not meet with him or help him procure witnesses. And neither Perotti nor the representative was permitted to review the surveillance footage. Perotti pointed out these alleged deficiencies in an administrative appeal, and a rehearing was ordered.

At the rehearing in March 2008, Perotti insisted that he acted in self-defense and that the alleged shanks were actually rolled-up magazines. This time his staff representative (a different employee than before) was allowed to watch the surveillance footage, though Perotti was not. By the time of the rehearing, however, the three witnesses Perotti had hoped to call had been released to halfway houses. Perotti complains that his representative would not contact them for him and that prison administrators refused to produce them for the hearing or give him their full names and addresses so that he could obtain written statements from them. The hearing officer again concluded that Perotti had committed the alleged violations. The officer noted in his decision that he had watched the surveillance footage and observed Perotti holding in his right hand a sharpened object roughly seven inches long while trying to stab the other inmate in the face and torso. The hearing officer again revoked a total of 67 days of good time.

In the meantime, Perotti had been charged in February 2008 with insolence after allegedly swearing at a counselor. See 28 C.F.R. § 541.13, tbl. 3, Code 312. A different hearing officer conducted the proceedings on that infraction immediately after the rehearing on the charges of fighting and possession of a weapon. Perotti's staff representative for the fighting and weapons charges did not realize that she was also  assigned to represent him on the insolence charge. She thus had not prepared for the latter hearing, but the hearing

officer refused to postpone the proceeding. The hearing officer also refused Perotti's request that he recuse himself because his wife, another prison employee, had previously reported Perotti for insolence, a charge which Perotti says was dismissed "as being without foundation." The hearing officer found Perotti guilty and revoked an additional 13 days of good time.

We review *de novo* the district court's denial of Perotti's § 2241 petition. See *Parsons v. Pitzer*, 149 F.3d 734, 736 (7th Cir. 1998). Federal inmates have a liberty interest in their earned good time, and Perotti thus was entitled to due process before any time could be revoked. See *Brooks-Bey v. Smith*, 819 F.2d 178, 180 (7th Cir. 1987). Due process in this context requires that the prisoner receive advance written notice of the charges, an opportunity to present evidence to an impartial decisionmaker, and a written explanation for the discipline that is supported by "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 564, 566 (1974).

Focusing first on the fighting/weapons charges, Perotti argues that he was denied due process because he could not make use of the surveillance footage nor could he contact the three witnesses in the halfway houses. Although his staff representative watched the videotape, Perotti asserts that she was not allowed to discuss the footage at the hearing and he was not allowed to question her about it. The missing inmates, he says, would have corroborated his claim of self-defense.

Perotti is mistaken, however, about the extent of his right to have direct access to evidence. A prisoner's access to specific evidence or witnesses may be restricted if it would be "unduly hazardous to institutional safety or correctional goals," *Wolff*, 418 U.S. at 566; *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir. 2002), or when the evidence or testimony would be irrelevant or repetitive, *Scruggs v. Jordan*, 485 F.3d 934, 939-40 (7th Cir. 2007); *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). The evidence that Perotti wanted would not have helped his claim of self-defense. No one disputes that the other inmate started the fight by swinging a broomstick at Perotti. And Perotti has never denied that he chased his antagonist after knocking the broomstick out of reach; he did not try instead to alert a guard or to defuse the situation in some other way. The hearing officer observed the entire sequence of events as captured in the footage and concluded that, no matter who started the fight, Perotti's subsequent actions were not entirely defensive. Moreover, even if Perotti had acted only in self-defense, the hearing officer still would have been within his discretion to sanction Perotti for fighting because there is no constitutional right to self-defense in a prison setting. See *Scruggs*, 485 F.3d at 938-39; *Rowe v. DeBruyn*, 17 F.3d 1047, 1052-53 (7th Cir. 1994).

Perotti's challenges to the loss of good time on the charge of possessing a weapon are also unavailing. He has presented a simple credibility question: was the hearing officer

compelled to find, as Perotti insisted, that Perotti held only rolled-up magazines, or was the hearing officer entitled to believe what he saw in the surveillance video, which depicted Perotti chasing his antagonist while trying to stab him with what appeared to be a sharp, seven-inch object. A hearing officer may resolve competing stories so long as some evidence supports the decision, *Johnson v. Finnan*, 467 F.3d 693, 695 (7th Cir. 2006), and this footage was more than enough to support the conclusion that Perotti possessed a weapon.

Perotti thinks that the hearing officer might have decided the question differently if Perotti had been allowed to make greater use of the video, but he has never explained how this is so, especially given the fact that the hearing officer personally viewed the videotape. We cannot see how permitting Perotti to question his staff representative about the same video would have changed anything. See *White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

Next, although Perotti alleges in his § 2241 petition that the three halfway-house witnesses would have testified that Perotti "did not have two knives during the altercation," that was not his contention during the administrative proceedings. Until he filed his petition, his position was that the witnesses would testify that he acted in self-defense. We are troubled by the government's contention that witnesses in BOP custody need not be made available, either for live testimony or to produce written statements, simply because they have been assigned to halfway houses. See 28 C.F.R. § 541.17(c) (instructing that hearing officer should call witnesses who are "reasonably available," including those from outside institution, and request written statements from unavailable witnesses with relevant information); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 762 n.9 (3d Cir. 1996) (resolving case on other grounds but expressing discomfort with government's characterization of witnesses transferred to other facilities as categorically "unavailable"); *Forbes v. Trigg*, 976 F.2d 308, 317 (7th Cir. 1992) (explaining that rules categorically barring certain classes of witnesses are unconstitutional). But the extent of the government's responsibility in that respect is not important here. Perotti may not recharacterize the nature of the proposed witnesses' testimony to bolster his § 2241 petition, and so we need not address the issue.

That leaves Perotti's challenges to the disciplinary hearing on the insolence charge. The district court did not address Perotti's specific arguments about that hearing. The government invites us to remand this portion of the § 2241 petition, but we see no need for a remand, since the record is developed enough to permit review now. See *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) (explaining that, if correct resolution of appeal is clear, remand needlessly prolongs case without contributing to correct outcome); *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990) (same).

Perotti's primary challenge to the insolence proceeding is his allegation that the hearing officer was biased against him. The reason, Perotti contends, is that the officer's wife, another prison employee, had previously filed an insolence charge against Perotti that was dismissed as unfounded. (Perotti further asserted in his § 2241 petition that the officer's wife had been "reprimanded" for filing a false disciplinary charge, but he did not make that allegation in his administrative appeal and has abandoned that characterization before this court.) An inmate facing disciplinary charges has the right to an impartial decisionmaker. *Wolff*, 418 U.S. at 571. But "the constitutional standard for impermissible bias is high," *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003), and an adjudicator is entitled to a presumption of "honesty and integrity" absent clear evidence to the contrary, see *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Due process requires disqualification of a decisionmaker who was directly or substantially involved in the underlying incident, *Gaither*, 236 F.3d at 820, and we have assumed that a decisionmaker might likewise be impermissibly biased if his spouse is a crucial witness in the proceeding, see *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002). A hearing officer is not automatically deemed biased, however, simply because he adjudicated or was involved in a previous disciplinary charge against the prisoner. See *Piggie*, 342 F.3d at 666-67; *Pannell*, 306 F.3d at 502. And if his own involvement in a prison disciplinary matter would not have disqualified the hearing officer, neither would his wife's.

Perotti also asserts that he was denied effective assistance of his staff advocate because she was unable to prepare properly for the insolence hearing. A BOP regulation, 28 C.F.R. § 541.17(b), provides that a hearing officer "shall afford a staff representative adequate time to speak with the inmate and interview requested witnesses where appropriate." But the regulation gives the hearing officer discretion to determine when advance investigation by a staff representative is necessary, and there is no evidence that the officer's decision to proceed with Perotti's hearing in the absence of such investigation was improper. Perotti has not alleged, for example, that he was prevented from gathering evidence on his own prior to the hearing, nor has he identified any specific witnesses he would have liked the staff representative to consult or explained what they would have said.

Finally, we note that Perotti alleged in his petition that he never received a written decision disposing of the insolence charge, and we do not see any such document in the record. *Wolff* requires the prison authorities to give such a statement to the prisoner. 418 U.S. at 564-65. Perotti has not pressed this issue on appeal, however, and thus we have no need to decide whether the apparent absence of the statement of reasons has any effect on Perotti's case.

AFFIRMED.