**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 9, 2019[*]
Decided May 9, 2019

**Before**

JOEL M. FLAUM, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2650

| | |
|---|---|
| EARLIE B.A. BERRY, JR., <br> *Petitioner-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:17-cv-00250-JMS-DLP |
| WENDY KNIGHT, <br> *Respondent-Appellee*. | Jane Magnus-Stinson, <br> *Chief Judge*. |

**O R D E R**

Earlie Berry, an Indiana inmate, lost good-time credit for resisting a corrections officer who was escorting him to a holding cell. Berry petitioned for habeas corpus relief, *see* 28 U.S.C. § 2254, alleging due process violations during his disciplinary hearing. The district court denied the petition. Because there was some evidence to

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

support the charge of resisting, and the evidence that Berry wanted the hearing officer to consider would not have exculpated him, we affirm.

A corrections officer at the Putnamville Correctional Facility was escorting Berry to a holding cell in the lobby of the Disciplinary Restricted Housing Unit. According to that officer, "[j]ust before entering the holding cell … [Berry] physically resisted by spinning around and pulling his arms from my grip." A second corrections officer observed the incident and gave the same account. A third officer later summarized video footage of the incident: "It appears that once [Berry] enter[s] the cell [he] turn[s] to the right and away from [the officer]." Corrections staff charged Berry with resisting a staff member and provided him with a "screening report," on which a prisoner acknowledges notice of the charge, enters a plea, and designates witnesses and evidence to present at a hearing.

Before his disciplinary hearing, Berry pleaded not guilty. The only evidence that he requested on the screening report was the video recording of the incident. (The hearing officer provided the third officer's summary but did not allow Berry to view the footage, citing security concerns. The video was entered into evidence as a confidential exhibit.) At the hearing, Berry explained that he generally wears orthopedic wrist braces because of nerve damage but had not been allowed to wear them when the officer was escorting him. He had merely asked the officer not to twist his wrists, he continued, before the guards "jumped" on him. Berry stated that he "was unruly cussing and everything" during the incident. He asked for a continuance to obtain copies of his medical records to support his defense, but the hearing officer denied his request. Based on Berry's statements, the officers' reports, and the video, the hearing officer found Berry guilty of resisting. He lost 30 days of phone privileges and 120 days of good-time credit (60 days from the new sanction and 60 days from a previously suspended sanction).

Berry appealed the decision to the warden and then the Indiana Department of Corrections. He elaborated that because of nerve damage, his wrists are "hypersensitive," and rather than resisting, he reflexively jerked when the officer applied pressure to his arms. Moreover, Berry protested, the hearing officer had unfairly rejected his request to present medical records to substantiate this account. Neither appeal succeeded.

Berry then petitioned the district court for a writ of habeas corpus to restore his good-time credit. He submitted medical records and argued that they would have

exculpated him because they show that his "resistance" was an involuntary reflex. Thus, he argued, the hearing officer's refusal to grant him a continuance of his hearing so that he could obtain copies of those records deprived him of due process. The district court denied Berry's petition. It ruled that exclusion of his medical records was not prejudicial because they did not undermine or contradict the conclusion that he resisted the officer. It also found that the corrections officers' reports and the video were sufficient evidence that Berry resisted the officer.

We review the denial of a petition for habeas corpus relief de novo. *Scruggs v. Jordan*, 485 F.3d 934, 938 (7th Cir. 2007). On appeal, Berry maintains that the hearing officer's refusal to grant him a continuance violated his due-process rights. He contends that if he had been allowed time to gather his medical records, he could have proved that what was deemed "resistance" was merely an uncontrollable response to sudden pain when the officer twisted his wrists. Therefore, Berry concludes, there is a reasonable probability that he would not have been found guilty had a continuance been granted.

The denial of Berry's request for a continuance, however, did not deprive him of due process. The right to due process requires that prisoners be allowed to call witnesses and present other evidence before losing good-time credit. *Donelson v. Pfister*, 811 F.3d 911, 917 (7th Cir. 2016) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). But this right is "not unqualified"—prison officials may summarily deny a prisoner's request for evidence when he waits until the day of the hearing to ask for it. *Sweeney v. Parke*, 113 F.3d 716, 720 (7th Cir. 1997), *disapproved in part on other grounds by White v. Ind. Parole Bd.*, 266 F.3d 759, 765–66 (7th Cir. 2001). Berry could have personally obtained his medical records in the five days before the hearing or requested their consideration using the screening report, as he did for the video evidence. Because Berry had enough time to prepare his defense, the denial of his day-of-hearing request for a continuance did not violate his due-process rights. *Sweeney*, 113 F.3d at 719–20 (finding twenty-four hours to prepare defense adequate) (citing *Wolff*, 418 U.S. at 564). Moreover, Berry's own statement about being unruly and the video evidence undermine his contention that he suddenly reacted to the officer jerking his wrists.

Relatedly, Berry also argues that there was insufficient evidence to find him guilty because, he asserts, the two officers' reports that he resisted *before* entering the holding cell contradict the third officer's summary of the video (and the district court's, for that matter) that Berry resisted the officer *inside* the cell. Further, he argues, his medical records would show that he did not intend to resist the officer.

A prison's disciplinary decision must be supported by "some evidence" bearing "some indicia of reliability." *Scruggs*, 485 F.3d at 941 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985)). In this case, the video and the officers' accounts provide evidence that Berry turned and pulled away from the escorting officer. The minor difference among the officers' descriptions with respect to the timing of Berry's actions did not require the hearing officer to conclude that Berry did not resist—indeed, the video depicts actions both inside and outside the cell that the hearing officer could have interpreted as resisting. *See Jones v. Cross*, 637 F.3d 841, 849.

We have considered Berry's other arguments, and none has merit.

AFFIRMED