In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 22-3068

MALCOLM WILSON,

*Plaintiff-Appellant,*

*v.*

ANGELITA CASTANEDA,

*Defendant-Appellee.*[*]

---

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 22-cv-822 — **Jon E. DeGuilio**, *Judge.*

---

ARGUED SEPTEMBER 27, 2024 — DECIDED JULY 15, 2025

---

[*] Because of the procedural posture of this case (it was dismissed on preliminary screening and prior to service), the defendant-appellee did not participate in this appeal. Upon this court's invitation, however, the Attorney General of Indiana filed a brief and appeared at oral argument in this matter as amicus curiae.

Before BRENNAN, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

PRYOR, *Circuit Judge*. Malcolm Wilson, an Indiana prisoner, sued Lieutenant Angelita Castaneda with the Indiana Department of Correction. Invoking 42 U.S.C. § 1983, Wilson alleged that Castaneda, who presided over Wilson's disciplinary hearing, violated the Fourteenth Amendment by imposing a restitution order without any evidence to support that sanction. The district court dismissed Wilson's pro se complaint at the screening stage under 28 U.S.C. § 1915A and later denied his motion for reconsideration. Wilson appeals the dismissal, but for the reasons discussed below, we affirm.

## I. BACKGROUND

We review the district judge's screening order de novo and accept the factual allegations in the complaint as true, drawing all reasonable inferences in Wilson's favor and construing his pro se complaint liberally. *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020). Because Wilson attached several documents to his complaint, we consider those documents as part of the complaint as well. *Arnett v. Webster*, 658 F.3d 742, 746 (7th Cir. 2011).

Wilson is incarcerated at the Indiana State Prison (ISP), Michigan City, Indiana, in the custody of the Indiana Department of Correction (IDOC). On April 26, 2022, security camera footage captured Wilson running down a stairwell and into a hallway while being chased by an inmate who was attempting to stab Wilson. Upon entering the hallway, Wilson, attempting to defend himself, snatched a cane from another inmate which caused that inmate to fall to the ground. Other inmates intervened and deescalated the situation. The fallen inmate

was helped to his feet but doubled over in pain. The prison later sent him to an outside hospital for medical care.

ISP charged Wilson with battery, with Lieutenant Angelita Castaneda, a correctional officer at the prison, conducting his disciplinary hearing on May 26, 2022. After hearing testimony from Wilson, reviewing the conduct reports prepared by staff, and viewing the video footage, Castaneda found Wilson guilty of battery. Castaneda then imposed a sentence of 90 days in restrictive housing, demoted Wilson a credit class, and—relevant to this appeal—ordered him to pay "up to $100,000" in restitution for medical costs. On the remittance request form, Castaneda explained that Wilson had been ordered to pay this amount because of his "medical battery against another."

On June 3, 2022, Wilson appealed the guilty finding and restitution sanction, arguing there was insufficient evidence to support the $100,000 restitution amount. The IDOC Appeal Review Board eventually denied Wilson's appeal on August 19, 2022. The Board determined there was sufficient evidence to support Castaneda's findings of guilt and the restitution order.

Having exhausted his administrative remedies, Wilson sued Castaneda under 42 U.S.C. § 1983, bringing a Fourteenth Amendment due process claim. Wilson alleged that Castaneda had imposed the restitution order without any evidence to support the sanction. He attached to his complaint various ISP forms from his disciplinary proceedings, including an ISP officer's conduct form summarizing the April 26 investigation; a written summary of the video recording of the incident; findings of fact from the disciplinary hearing; and the restitution remittance form for Wilson's account, which

allowed the prison to withdraw funds to satisfy the restitution order.

The district court dismissed Wilson's complaint at screening. *See* 28 U.S.C. § 1915A. Relying on the documents attached to Wilson's complaint, the district court found Castaneda had sufficient evidence to support the restitution order. That evidence, the court reasoned, demonstrated that the prison had incurred some financial loss as a result of Wilson's actions, and so his due process claim failed.

Wilson moved to reconsider but filed a notice of appeal before the district court could address the motion. Because the pending motion caused the notice to be ineffective, we stayed the appeal to give the district court an opportunity to consider Wilson's motion. *See* FED. R. APP. P. 4(a)(4). We lifted the stay once the district court denied the motion.

After reviewing Wilson's pro se opening brief, we recruited counsel to appear on Wilson's behalf and address three questions, including:

(1) whether Wilson's complaint stated a federal due process claim when a disciplinary hearing officer imposed restitution for costs associated with Wilson's disciplinary infraction without evidence to support the amount of restitution;

(2) what evidence of the amount owed, if any, is necessary to satisfy federal due process requirements; and

(3) if evidence is necessary, must that evidence be relied on at the time a disciplinary officer imposes restitution as a sanction or is it

> sufficient to produce that evidence at some later time.[1]

Also, based on the procedural posture of the case—the named defendant not participating in the appeal—we invited the Indiana Attorney General to appear as amicus curiae to respond to Wilson's appellate arguments on these three issues.[2]

## II. ANALYSIS

The Fourteenth Amendment guarantees prisoners due process before prison officials deprive them of a protected interest. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 447 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Wilson's property interest in the funds in his prison trust account is a protected interest. *See Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986); *see also* IND. DEP'T OF CORR., *The Disciplinary Code for Incarcerated Adults*, IX(E)(3)(e) (Effective May 1, 2023) (available at https://www.in.gov/idoc/files/policy-and-procedure/policies/02-04-101-ADP-5-1-2023.pdf) (limiting restitution to an "estimated amount."). Therefore, before he could be deprived of this protected interest, the Fourteenth Amendment required ISP to provide Wilson with certain procedural protections. *Hill*, 472 U.S. at 453.

In the pre-deprivation prison disciplinary hearing context, due process requires an inmate to receive (1) advance written

---

[1] App. Dkt. 8.

[2] We note that appellate counsel for Wilson raises an additional Eighth Amendment Excessive Fines Clause argument. This argument finds no home in Wilson's complaint and was never raised before the district court. We therefore decline counsel's invitation to comment on the issue. *See Boyers v. Texaco Refin. & Mktg., Inc.*, 848 F.2d 809, 811–12 (7th Cir. 1988).

notice of the disciplinary charges; (2) an opportunity to defend oneself, including to be heard before an impartial decisionmaker, call witnesses, and present evidence in defense, subject to certain exceptions; and (3) a written statement by the factfinder of evidence relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563–67.

In addition to these procedural safeguards, a prison disciplinary decision must also be supported by "some evidence" in the record. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) (quoting *Hill*, 472 U.S. at 455). This lenient standard requires no more than "a modicum of evidence." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quoting *Hill*, 472 U.S. at 455); *see also McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Our inquiry ends once this "meager threshold has been crossed." *Scruggs*, 485 F.3d at 941. We ask only whether the record was so devoid of evidence as to make the official's findings arbitrary or without support. *Webb*, 224 F.3d at 652. "[T]he relevant question is whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id*. (quoting *Hill*, 472 U.S. at 455–56); *see also United States v. Kizeart*, 505 F.3d 672, 675 (7th Cir. 2007) (a prison disciplinary board's sanction will be set aside only if it is "plainly" unreasonable).

Wilson does not contest that his disciplinary hearing, which resulted in his finding of guilt, complied with the three procedural requirements of *Wolff*. Indeed, he was given notice of the charges against him, he was provided an opportunity to defend himself, and Castaneda provided her written findings. He also does not contest that the finding of guilt was supported by some evidence or that he could be ordered to pay restitution generally upon that finding. Rather, he argues

that Castaneda deprived him of due process because, in his view, the "up to $100,000" restitution figure was not substantiated by any evidence.

We disagree. The disciplinary hearing documents Wilson attached to his complaint establish that Wilson was found guilty of battering another inmate. The reports also establish that the injured inmate was sent to an outside hospital for medical treatment. Although that evidence is not so precise as to identify a specific restitution figure, it is still "some evidence" to establish both Wilson's violation and that the prison incurred financial costs from the injured inmate's hospital visit. With this evidence in the record, we find there was adequate support for Castaneda's order of restitution. *See Webb*, 224 F.3d at 652.

Wilson further maintains that he was deprived of the right under *Wolff* to view exculpatory evidence related to the injured inmate's medical bills. But "exculpatory evidence" is evidence which tends to establish innocence. *See* Evidence, Black's Law Dictionary (12th ed. 2024). The medical bills were not exculpatory because they would not tend to establish Wilson's innocence in relation to the battery charge. Therefore, *Wolff* was not violated.

Wilson argues that we should not rely on *Webb* because it involved the loss of good time credits rather than restitution. This argument is inapplicable because compliance with *Wolff* is sufficient due process for either the deprivation of a liberty interest in good time credits or the imposition of a restitution sanction. *Campbell*, 787 F.2d at 224 n.12.

This case is, however, distinguishable from two of our unpublished decisions: *Lindell v. Pollard*, 681 F. App'x 518 (7th

Cir. 2017), and *Tonn v. Dittmann*, 607 F. App'x 589 (7th Cir. 2015). In *Lindell*, a Wisconsin prison ordered Lindell, a state inmate, to pay $1,870 as restitution to reimburse the prison for his hospital visit after he allegedly misused medication—a finding that Lindell alleged "lack[ed] an evidentiary basis." 681 F. App'x at 519. Because Lindell's due process claim was dismissed at screening, we accepted as true Lindell's allegation that the defendant "deprived him of $1,870 of his personal funds by finding him guilty of misusing medication without *any* evidence backing that accusation or amount." *Id.* at 521 (emphasis added). Similarly, in *Tonn*, another Wisconsin inmate filed a complaint alleging that his prison disciplinary hearing "was devoid of" evidence of "any actual or estimated losses arising from his violation." 607 F. App'x at 590. Without any evidence at screening to refute the allegations of Lindell or Tonn, we remanded each case for further proceedings. *Lindell*, 681 F. App'x at 521; *Tonn*, 607 F. App'x at 591.

Here, however, Wilson's attachments to his complaint demonstrate that his disciplinary hearing did not violate the due process requirements of the Fourteenth Amendment. Castaneda's restitution order was supported by Wilson's statements, video evidence of the incident, and the conduct reports of the staff which stated the injured inmate had to be transferred to an outside hospital. This support, while meager, constitutes "some evidence" that the prison incurred costs as a result of Wilson's violation. *See Webb*, 224 F.3d at 652; *see also Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (noting that pro se plaintiffs may inadvertently plead themselves out of court by pleading facts that preclude recovery). To that end, we disagree with the dissent that the complaint in this case may be analogized to the complaint in *Lindell*, and instead find the cases materially distinguishable. In *Lindell*,

we were required to accept as true that there was no evidence to support Lindell's underlying conviction nor evidence of any cost incurred for transferring an injured inmate to the hospital. This meant that there was not *any* evidence to support the accusation of guilt and imposition of restitution, such that the "some evidence" standard could not be satisfied. But here, we have that evidence, even if thin, such that the "some evidence" standard is satisfied. And while the record might be clearer if a precise bill of costs for the hospital transportation and medical care were provided, the Constitution does not require that level of precision; all that is required is "some evidence" to support the disciplinary conclusion. *Scruggs*, 485 F.3d at 941; *Webb*, 224 F.3d at 652.

Finally, we observe that we have never required, for purposes of federal due process, specific evidence of the amount of restitution at the time a sanction is entered. Indeed, restitution is inherently limited. As described by the Indiana Department of Correction's disciplinary policy, the maximum restitution sanction that can be imposed is "the assessed amount of the loss." *Ind. Dep't of Corr., The Disciplinary Code for Incarcerated Adults*, IX(E)(3)(e) (Effective May 1, 2023). Moreover, the code requires eventual documentation of the precise amount, and for medical restitution, requires that prisoners should, at some point, receive copies of redacted medical bills. *Id*. n.5. It also permits a hearing officer to assess restitution for medical costs "up to an estimated amount" if—at the time of the hearing—the officer cannot determine the amount of restitution "due to ongoing medical treatment or a delay in receiving the medical bills." *Id*. That Castaneda did not set an amount when she entered the sanction, but instead proffered an estimate, is not a constitutional violation of due process.

### III. CONCLUSION

Because Wilson received the process that he was due, we AFFIRM the judgment of the district court.

JACKSON-AKIWUMI, *Circuit Judge*, dissenting. I agree with the majority's pronouncement that *Hill*'s "some evidence" standard applies where prison officials seek to deprive an inmate of his trust account funds by imposing restitution. *Ante*, at 5–6 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445 (1985)). I also agree with the majority that there is wisdom we can glean from our unpublished decisions in *Tonn v. Dittmann*, 607 F. App'x 589 (7th Cir. 2015), and *Lindell v. Pollard*, 681 F. App'x 518 (7th Cir. 2017). *See ante*, at 7–8. However, I write separately because I interpret *Hill* and our unpublished decisions to compel a different result: We should allow Wilson's complaint to move past the screening stage where it was dismissed, in my view, prematurely.

In *Hill*, the Supreme Court addressed whether a prison disciplinary board's revocation of good time credits violated due process if the decision was not supported by evidence in the record. 472 U.S. at 447. The Court held that it did and concluded that due process required "*some evidence* support[ing] the decision by the prison disciplinary board to revoke good time credits." *Id.* at 455 (emphasis added). Although the Court declined to adopt a "more stringent evidentiary standard," it clarified the "relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56. In other words, the "some evidence" must be tied to the board's ultimate conclusion. *See id.*

The imposition of restitution, which *Hill* does not address, presents a slightly different scenario than the revocation of good time credits. With the latter, the same evidence that supports the underlying disciplinary charge will generally suffice as support for an accompanying revocation of good time

credits. This is not always true for the imposition of restitution, which aims to repay the prison funds it lost because of an inmate's actions. *See, e.g.*, *Campbell v. Miller*, 787 F.2d 217, 224 (7th Cir. 1986) (involving restitution to "make[] good the damage [an inmate] has caused to prison property"). In my view, if we apply *Hill*'s guidance to the restitution context, a disciplinary board comports with due process if there is: (1) some evidence supporting the conclusion of guilt on the underlying charge and (2) some evidence supporting the conclusion to impose restitution.

This application of *Hill* finds support in our unpublished orders, *Tonn* and *Lindell*. Both panels of judges concluded that an inmate could plausibly allege a due process violation where prison officials offered no evidence (separate from evidence of the underlying charge) of the *actual* or *estimated* restitution amount imposed. *See* 607 F. App'x at 590 ("Tonn thus has a protected interest in his funds to the extent that they are not needed to reimburse the prison for expenses *that it has incurred or, by estimate, may incur* because of his rule violation." (emphasis added)); 681 F. App'x at 521 (allowing Lindell's allegations that an officer found him "guilty of misusing medication without any evidence backing that accusation *or amount*" to proceed (emphasis added)).

The majority finds Wilson's case distinguishable because, unlike the plaintiffs in *Tonn* and *Lindell*, Wilson attached to his complaint a report by prison staff that the injured inmate had to be transported to an outside hospital. *Ante*, at 8. The majority reasons that this report suffices as "some evidence" that the prison incurred some costs. *Id.* at 8–9. I offer two reasons why I am not persuaded that this report meets even *Hill*'s low evidentiary bar.

First, were we to apply the majority's reasoning—that a prison merely has to present some evidence that it incurred some cost—to the context of criminal charges in disciplinary proceedings, it would run contrary to *Hill*'s central tenet that the evidence in the record support "the conclusion reached by the disciplinary board." 472 U.S. at 455–56. For example, say a disciplinary board charges an inmate with assaulting another inmate. Under *Hill*, the "some evidence" must support the underlying charge of assault, not just *some* charge. *Id.* Likewise, it is not enough for a prison to present "some evidence" that there were *some* costs. As the *Tonn* panel concluded, the evidence must be tied to the "actual or estimated losses arising from [the inmate's] violation." *See* 607 F. App'x at 590.

Second, evidence of a hospital visit is not "some evidence" of an amount owed or likely owed in restitution. Take *Lindell*, where a disciplinary board imposed restitution to recoup the costs of an inmate's hospital visit after he misused medication. 681 F. App'x at 521. Had evidence of the hospital visit been enough, as the majority proposes, then why would the *Lindell* panel nonetheless find it necessary that the prison provide "evidence backing that … amount"? *Id.* I see one possible distinction in that the prison in *Lindell* imposed a specific restitution amount of "$1,870 for medical care," *id.* at 519, whereas Wilson was assessed restitution of "up to $100,000." Still, the fact that Wilson's imposed restitution was an estimate does not prove that the prison provided some evidence of that estimate.

Granted, the question before us takes us into unprecedented territory, but not one altogether unfamiliar to our court. Like the majority, I recognize the Supreme Court's low evidentiary standard for prison disciplinary board decisions

in *Hill*.[1] *Ante*, at 6. At the same time, I read *Hill* to require that the "some evidence" be tied to a disciplinary board's ultimate conclusion. 472 U.S. at 455–56. In the restitution context, I, like the panels in *Tonn* and *Lindell*, interpret this to mean that disciplinary boards must uphold due process by providing "some evidence" of the actual or estimated loss, not just some loss. And this "some evidence" requirement applies even where, as here, medical bills are not yet available and even where, as here, the disciplinary board imposes a range for the restitution amount. The majority offers a possible, though narrower, interpretation of our circuit's unpublished decisions. In my view, this narrower interpretation does not comport with an application of *Hill*.

Not unreasonably, the majority leans into the prison policy on managing restitution. *Ante*, at 9. But, as I see it, whether the policy calls for more refined evidence at some point after the disciplinary hearing is beside the point. The disciplinary board's due process obligation to present "some evidence" of the actual or estimated loss arises before it imposes

---

[1] The evidentiary standard is indeed low, but I hesitate to join the majority's suggestion that the disciplinary board's decision must be "plainly unreasonable." *Ante*, at 6. That language comes from *United States v. Kizeart*, where we held that "a defendant who challenges his sentence for violating supervised release [must] show that the sentence is plainly unreasonable." 505 F.3d 672, 674–75 (7th Cir. 2007). The *Kizeart* panel surmised that its holding (about challenges to penalties for supervised release violations) could "borrow" from the "judicial review of the sanctions imposed by prison disciplinary boards," and then noted that "[s]uch sanctions must indeed be 'plainly' unreasonable to be set aside." *Id.* at 675. Although the *Kizeart* panel employed this analogy, the decision offered no caselaw demonstrating that our circuit has adopted a "plainly unreasonable" standard in the prison disciplinary board context.

restitution. Otherwise, I fear today's decision will grant prisons a blank check for any restitution amount imposed at a disciplinary hearing. For these reasons, I respectfully dissent.