In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3395

CHARLES DONELSON,

*Petitioner-Appellant*,

*v.*

RANDY PFISTER,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 13-CV-1523 — **Joe Billy McDade**, *Judge*.

SUBMITTED MAY 26, 2015* — DECIDED JANUARY 28, 2016

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. In this appeal we address an unusual state court ruling denying a prisoner's challenge to discipline that deprived him of liberty, he says, without having an opportunity to call supporting witnesses and to offer

---

* After examining the briefs and record, we have concluded that oral argument is unnecessary. The appeal has been submitted on the briefs and record. See Fed. R. App. P. 34(a)(2)(C).

supporting evidence. The state appellate court denied relief without reaching the merits. The court's reason, not mentioned at any earlier stage of the case, was that the prisoner had not followed the instruction on the paper form for requesting witnesses or evidence to tear off the top portion of the form. As we explain below, this novel ruling carried bureaucratic concerns about paperwork to an unreasonable extreme and does not bar federal consideration of the prisoner's constitutional claim on the merits.

Appellant Charles Donelson, an Illinois prisoner, lost a year of accumulated good time as punishment for two incidents involving the same guard. After unsuccessfully challenging that punishment in state court, Donelson filed in the federal district court a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Donelson claims that the prison adjustment committee violated his right to due process by disciplining him without adequate evidence and by not allowing him to call witnesses or to have access to exculpatory video and audio recordings. The district court ruled against Donelson, partly on the merits and partly on a procedural ground. We agree with the partial merits ruling but disagree with the procedural ruling. We therefore vacate the judgment and remand for further proceedings.

The two incidents both involved guard Jimmie Watson and occurred on the same day in July 2011. Watson, who wrote one of two reports accusing Donelson of misconduct, said that he caught Donelson trying to leave his prison wing and ordered him back to his cell because he was "not properly dressed to leave the wing and did not have permission to leave." But at first, Watson said, Donelson ignored instructions to show his inmate identification card and to

move away from the door to the wing. And when he did finally comply, Watson added, Donelson muttered, "I'll fix you, I'll have your job, bitch."

An hour later Donelson and Watson had their second confrontation. Matthew Lindsey, the guard who wrote the other incident report, alleged that he saw Donelson step around a closing door, evade two nearby guards, and run straight at Watson. According to Lindsey, Donelson punched Watson in the face several times with a closed fist before the other guards could intervene. Even then, Lindsey said, Donelson kicked and jerked his arms to avoid being restrained.

Donelson has consistently disputed both of the guards' reports. In a written statement submitted to the prison adjustment committee and attached to his § 2254 petition, Donelson asserted that he was leaving his wing with permission, that he presented his identification card to Watson when asked, that he never refused a command to move away from the door to the wing, and that he never said anything offensive to Watson. Video from a surveillance camera would confirm his account, said Donelson in his written statement. As for the alleged assault an hour later, Donelson asserted that Watson attacked him. Watson, he said, had been threatening him for months and during their earlier encounter had warned, "I should kick your ass." When he was later called to a meeting with Watson, Donelson continued, he expected a lieutenant to be present as well. Instead, Watson started throwing punches. In his statement Donelson said that he ran for the door because another guard who was present would not intervene. At some point he tried using an emergency telephone to request help. Again Donelson add-

ed that video surveillance and the recording of his telephone call would back his version of events.

After these incidents Donelson was charged with unauthorized movement within the prison, disobeying orders, insolence, and assaulting Watson. He was given copies of the incident reports that Watson and Lindsey had written using a standard form.

The form explains that inmates may call witnesses and present physical evidence at disciplinary hearings. At the bottom of the form, below a dotted line, is space for the names of two witnesses and a single line to describe their anticipated testimony. Above the dotted line, inmates are told that, if they want to call witnesses, they must name those witnesses "in advance of the hearing" and "specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee." The form says nothing about physical evidence, above or below the line.

On Watson's incident report, Donelson asked for the video from the "R1 B Wing Camera" and named as witnesses "C/O Cox" and "I/M Leamon," a guard and inmate who, Donelson says, witnessed the first incident with Watson. On Lindsey's incident report, Donelson again asked for the video from the "R1 B Wing Camera" along with the recording of his phone call (which he identified with a number).

But Donelson then took action that the state appellate court deemed fatal to his claim. Rather than detaching and submitting just the bottom portion of the incident reports, Donelson made copies for himself and then submitted the entire pages to the adjustment committee. There is no indica-

tion that his submissions were refused, returned, or discarded because they included the portions above the dotted line. According to Donelson, when he asked at the disciplinary hearing about his witnesses and physical evidence, the committee chair told him, "We'll get to that," but the requested physical evidence and witnesses were never produced. No one gave as a reason that his written requests were not cut on the dotted line.

The adjustment committee found Donelson guilty and, in addition to other punishments, revoked a year of his good time. The deprivation of a statutory right to credit toward a prisoner's sentence is a deprivation of liberty that requires due process of law. E.g., *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir. 1996), citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Jackson v. Carlson*, 707 F.2d 943, 946 (7th Cir. 1983). The committee's "Summary Report" drew heavily from Watson's and Lindsey's incident reports in the section titled "Basis for Decision." The committee wrote, "No Witness Requested" in the section reserved for identifying the hearing witnesses. No mention was made of physical evidence.

After exhausting his administrative remedies, Donelson filed a petition for a writ of mandamus in an Illinois trial court. See 735 ILCS 5/14-101 to 5/14-109. That's the established means for an Illinois inmate to challenge in court a disciplinary decision and is also a prerequisite for Illinois prisoners challenging disciplinary actions in federal court by bringing a § 2254 petition in federal court. See *McAtee v. Cowan*, 250 F.3d 506, 508 (7th Cir. 2001) (noting that prisoners ordinarily must exhaust available state remedies, and comparing Indiana, which has no state judicial review for prison discipline, to Illinois and Wisconsin, which do). As in his lat-

er federal petition, Donelson contended that the prison ad-
justment committee had violated his right to due process by
relying on inadequate evidence and refusing his requests to
call witnesses and to submit the video and audio recordings.

The state trial court rejected Donelson's petition "for the
reasons stated" in the respondent's motion to dismiss. None
of those arguments had anything to do with Donelson ask-
ing for witnesses and physical evidence on forms that were
not cut on the dotted line. Nor did the respondent make that
argument when Donelson appealed the state trial court's de-
cision.

Instead, the state appellate court on its own initiative first
faulted Donelson for not following the instruction to detach
and submit only the bottom portion of the form. *Donelson v.
Godinez*, No. 4-12-0795, 2013 WL 3325003, at *4 (Ill. App.
2013). On that basis the state appellate court, which did not
distinguish between witnesses and physical evidence, rea-
soned that Donelson was not entitled to relief "on this issue"
because he "failed to follow Department rules in requesting
witnesses." *Id*. As for the evidence supporting the adjust-
ment committee's decision, the appellate court concluded
that the guards' reports underlying that decision were "suf-
ficiently detailed" to satisfy due process. *Id.* The Supreme
Court of Illinois denied review. 996 N.E.2d 11 (Ill. 2013).

In denying Donelson's federal petition, the district court
first found that relief under § 2254 is not available regarding
the alleged denial of Donelson's right to present evidence.
The respondent insisted, and the district court agreed, that
the Illinois appellate court had rejected this part of the case
based on an "adequate and independent state law ground."
The district court then concluded that Donelson had not sim-

ilarly defaulted his challenge to the strength of the evidence, but that the state court's application of the "some evidence" standard was reasonable. See *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). On appeal Donelson challenges all of the district court's reasoning.

We first consider Donelson's argument that the adjustment committee's decision was not supported by "some evidence." The state appellate court reached the merits of this due-process theory, and we must uphold that court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established federal law," or otherwise rested on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d); see, e.g., *Campbell v. Reardon*, 780 F.3d 752, 761 (7th Cir. 2015). Under *Hill* "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." 472 U.S. at 455–56; see also *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Here, the adjustment committee relied on the two guards' incident reports. The state court's finding that those reports satisfy the modest "some evidence" standard was not an unreasonable departure from federal law. See *McPherson*, 188 F.3d at 786; *Rudd v. Sargent*, 866 F.2d 260, 262 (8th Cir. 1989).

Donelson also contends that the disciplinary hearing was not fair because he was denied due process when he could not present evidence in his defense. Before considering the merits of this argument, we must first decide whether the Illinois appellate court relied on an adequate and independent state-law ground to reject this aspect of Donelson's claim:

that Donelson failed to tear off the top of the forms before he returned his requests for witnesses and evidence.

The state appellate court did not cite, the respondent does not identify, and we have not found any Illinois law, regulation, or precedent requiring inmates, on penalty of loss of their right to be heard, to detach and submit *only* the bottom portion of the form. As far as we can tell, the Department of Corrections added this directive to its standard form, most likely so that the inmate could retain what is in essence the charging information on the top of the form without having to make a copy before submitting a witness request.

The respondent has never before claimed that an adjustment committee is authorized to reject a request for witnesses or physical evidence on the ground that too much of the form has been submitted. Nor has the respondent asserted that any adjustment committee, including Donelson's, has ever done so. Instead, the state appellate court itself was the source of this post-hoc rationale. The respondent did not make this argument to the state trial or appellate courts, and the adjustment committee did not give this rationale during the hearing or in its summary report. The committee instead said mistakenly that Donelson just did not request any witnesses. See *Wiggins v. Smith*, 539 U.S. 510, 526–27 (2003) (rejecting post-hoc rationale invoked by state courts and respondent); see also *Marcrum v. Luebbers*, 509 F.3d 489, 502–03 (8th Cir. 2007).

This asserted state-law ground is not adequate to support the state appellate court's decision and thus does not bar our review of Donelson's federal due-process claim on the merits. See *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010)

(explaining that review under § 2254 is foreclosed if state court resolves federal claim on state-law ground that is "both independent of the federal question and adequate to support the judgment"); *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009) (same). To be "adequate," a state-law ground must be "a firmly established and regularly followed state practice at the time it is applied." *Kaczmarek*, 627 F.3d at 592; accord, *Thompkins v. Pfister*, 698 F.3d 976, 986 (7th Cir. 2012).

Illinois allows prison administrators to refuse to hear witness testimony when offenders do not timely request those witnesses on the provided form. See 20 Ill. Admin. Code § 504.80(f)(2), (h)(3); *Taylor v. Frey*, 942 N.E.2d 758, 764 (Ill. App. 2011); *Newsome v. Illinois Prison Review Bd.*, 776 N.E.2d 325, 328 (Ill. App. 2002). But these authorities—the only ones cited by respondent on this point—do not support the notion that a disciplinary committee may deny a timely request for witnesses simply because the properly completed bottom portion of the form was submitted with the top portion of the form still attached. See 20 Ill. Admin. Code § 504.80(f)(2), (h)(3) (requiring inmates to submit witness requests on form provided but not specifying that bottom portion be detached); *Taylor*, 942 N.E.2d at 764 (noting that inmate conceded "he did not use the slip," which was blank and "still attached at the bottom of the disciplinary ticket"); *Newsome*, 776 N.E.2d at 328 (noting that inmate first requested witnesses orally at disciplinary hearing).

The respondent has not identified any case in which an adjustment committee has denied a request for witnesses or physical evidence on the ground that a properly completed form was not trimmed to the correct size. Nor does the respondent deny Donelson's assertion in the district court that

he previously submitted witness requests in the same way. Nor has the respondent identified any case before this one in which an Illinois court found that an adjustment committee was authorized to refuse an inmate's request for witnesses or physical evidence simply because the inmate sent in too much of a properly completed request form.

The record simply does not support the respondent's assertion that such a procedural rule "had been established and regularly followed for several years prior to petitioner's July 2011 hearing." We must therefore reject respondent's argument that the state court relied on an adequate state-law ground. The procedural rule adopted and enforced by the state court could not support a defense of procedural default against Donelson unless that rule was already established. See *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991). Aberrant state procedural rulings are not adequate to foreclose federal review under § 2254. See *Miranda v. Leibach*, 394 F.3d 984, 995 (7th Cir. 2005); *Page v. Frank*, 343 F.3d 901, 908–09 (7th Cir. 2003); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990). And this procedural rule—to the extent it exists at all—certainly appears to be aberrant.

Because the Illinois appellate court did not reach the merits of Donelson's claim that he was denied the right to call witnesses and to present video and audio recordings, federal courts will review the adjustment committee's actions without any deference to the state court's decision. See *Woolley v. Rednour*, 702 F.3d 411, 422 (7th Cir. 2012); *Harris v. Thompson*, 698 F.3d 609, 624 (7th Cir. 2012); *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). Due process requires that prisoners in disciplinary proceedings, before being deprived of good time, be allowed to call witnesses and present other evi-

dence. *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974); *Scruggs*, 485 F.3d at 939. Prison authorities are not compelled to accept requests "that threaten institutional goals or are irrelevant, repetitive, or unnecessary." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); see *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002). But the respondent has not contended that these exceptions apply to any of the witnesses or recordings that Donelson sought to introduce. In fact, the respondent has yet to oppose Donelson's due-process claim on the merits.

Donelson told the adjustment committee that the named witnesses would testify that he complied with rather than opposed Watson's orders, that the surveillance videos would confirm he had permission to leave the wing during the first incident and that two guards kept him from fleeing Watson's assault during the second incident, and that the telephone recording would show that he called for help during Watson's assault. This evidence, if Donelson has described it accurately, would undermine the committee's decision. We could not conclude that any error in excluding the evidence was harmless. Compare *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002) (remanding for evidentiary hearing when testimony "might have buttressed a potentially valid defense"), and *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (remanding for evidentiary hearing when record did not "demonstrate with any degree of certainty that" requested evidence "lacked exculpatory value or was otherwise irrelevant"), with *Jones*, 637 F.3d at 846–47 (affirming denial of § 2254 petition because proffered testimony would not have changed disciplinary committee's guilty finding), and *Piggie*, 344 F.3d at 678 (rejecting argument that denial of requested

witnesses violated due process since inmate failed to explain how testimony would have aided his defense).[1]

Accordingly, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

---

[1] Donelson also argues that an Illinois statute governing disciplinary proceedings, 730 ILCS 5/3-8-7, is unconstitutional. Donelson failed to make this argument in the district court. He cannot raise it for the first time on appeal. See *Pole v. Randolph*, 570 F.3d 922, 939–40 (7th Cir. 2009); *Winsett v. Washington*, 130 F.3d 269, 274 (7th Cir. 1997).