In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1884

CURTIS T. ELLISON,

*Petitioner-Appellant,*

*v.*

DUSHAN ZATECKY,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:12CV597 — **James T. Moody**, *Judge.*

SUBMITTED FEBRUARY 11, 2016 — DECIDED APRIL 19, 2016

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. A disciplinary officer found inmate Curtis Ellison guilty of possessing heroin at Pendleton Correctional Facility in Indiana. The officer punished Ellison by stripping him of 90 days' good-time credit. After exhausting his administrative remedies, Ellison petitioned the district court for collateral review under 28 U.S.C. § 2254, and he now appeals the denial of that petition. Because Ellison

was prevented from defending against the accusation that he possessed a controlled substance, we vacate the district court's decision and remand for further proceedings.

Correctional Officer Guffey presented Ellison with a screening report (the notice given an inmate about an impending disciplinary proceeding) asserting that, slightly more than a week earlier, Correctional Officer Bynum had confiscated heroin during a search of Ellison's cell. Ellison told Guffey that Bynum (whom Ellison knew) had not searched his cell that day. Two unfamiliar guards conducted the search, he said, and found nothing. Indeed, although a conduct report from Bynum does say that he found heroin in cell 10-5D, which is assigned to Ellison, a photo of the heroin discovered during the search is labeled "Cell 10-6D." That cell is located on the other side of the building from Ellison. He explained to Guffey that Bynum's conduct report mistakenly attributes to him the heroin found in Cell 10-6D, and he asked Guffey to identify the two guards who actually had searched his cell that day. He requested in writing that those guards, as well as Officer Bynum, appear as witnesses at his disciplinary hearing. Ellison also requested the surveillance video and the test results for the substance.

According to Ellison, three days after receiving the screening report, he recognized and spoke with one of the guards who had searched his cell. The guard identified himself as Correctional Officer Dorethery, confirmed that he had searched Ellison's cell on the day in question (but not with Officer Bynum), and stated that no contraband had been found during the search. Dorethery also said that his name

would have been included in the conduct report as a witness if heroin had been found during the search. Dorethery said he was willing to provide Ellison with a statement for his hearing and recommended contacting Sergeant Easton, his supervisor, to obtain a copy of the search log identifying the guards who had searched each cell. Ellison wrote to Officer Guffey the same day, explaining that he had identified Dorethery and wished to use his testimony and the search log to show that Bynum had found the heroin in Cell 10-6D, as noted on the photo of the contraband.

No witnesses showed at Ellison's hearing the following day. Not even Officer Bynum was present, even though Ellison had requested him by name at screening and he presumably could have addressed the discrepancy between Ellison's cell number included in the conduct report and a different inmate's cell number on the photo of the heroin. The hearing officer refused to call Officer Dorethery because, Ellison was told, his request had not been made at screening (this despite the fact that Ellison had been explicit at screening that he wanted to call as witnesses "the officers who shook down the cell" and had notified Officer Guffey promptly upon learning Dorethery's name). No explanation was given for the hearing officer's failure to call Bynum. Ellison was not permitted to watch the video of the search, and though the hearing officer viewed the video herself, she simply noted in her written decision, "Ofc. seen going into Ofds. cell," without naming the guard in the video or even saying she would recognize Bynum if it was him. At the hearing Ellison testified that he had never used drugs, emphasized that the cell number written on the photo shows that the heroin was found in a different inmate's cell, and

characterized the contradictory conduct report as a case of "clear human error." The hearing officer still found Ellison guilty.

In the district court Ellison claimed that he was denied due process because, he argued, the evidence of guilt was inadequate, the disciplinary hearing was not conducted fairly, and the evidence that the seized substance was heroin (an e-mail to Officer Guffey from "Tom Francum" saying that the substance had tested positive) was unreliable. Ellison elaborated that he had identified Officer Dorethery and requested both Dorethery's testimony and the search log in advance, and that the evidence he requested had been essential to show that the photograph, not Officer Bynum's later conduct report, correctly identifies the cell where the heroin was found. But the district judge understood Ellison to be challenging only the *sufficiency* of the evidence on which the hearing officer relied, and denied the § 2254 petition. The court reasoned that, although "there was contradictory evidence presented at his hearing, there is no indication that the decision was arbitrary." The conduct report, the court continued, provided some evidence on which to sustain the finding of guilt.

As an initial matter, we agree with Ellison that the district court read his petition too narrowly. True enough, the petition and Ellison's supporting memorandum do focus, as far as legal theories, on the sufficiency of the evidence generally and the reliability of the particular proof used to establish that the substance was heroin. But Ellison's detailed factual allegations confirm his pursuit of the claim that he was

denied due process by the hearing officer's refusal to allow
him to present evidence. The respondent (despite now con-
tending otherwise) understood Ellison's petition to include a
claim about the hearing officer's restrictions on presenting
evidence and defended that claim on the merits. In the dis-
trict court the respondent never suggested, as he argues
now, that Ellison procedurally defaulted this claim, so that
defense has been waived. *See Buggs v. United States*, 153 F.3d
439, 444 (7th Cir. 1998); *United States v. DeRobertis*, 798 F.2d
1062, 1066 (7th Cir. 1986). Indeed, in reply to the respond-
ent's opposition, Ellison confirmed that the respondent had
correctly understood him to be complaining about the re-
strictions on his presentation of evidence. That is our read-
ing of the petition as well.

Indiana prisoners have a liberty interest in earned good-
time credits and must be afforded due process before those
credits may be taken away. *See Piggie v. McBride*, 277 F.3d
922, 924 (7th Cir. 2002); *Montgomery v. Anderson*, 262 F.3d
641, 644–45 (7th Cir. 2001). Although inmates are not entitled
to the "full panoply of rights" due a defendant in a criminal
proceeding, *Wolff v. McDonnell*, 418 U.S. 539, 556, 566 (1974),
they must be allowed to present relevant evidence, including
witness testimony, unless it is cumulative or unduly threat-
ens the security of the facility. *See Piggie*, 277 F.3d at 925;
*Forbes v. Trigg*, 976 F.2d 308, 315–19 (7th Cir. 1992); *Miller v.
Duckworth*, 963 F.2d 1002, 1004–05 (7th Cir. 1992). Moreover,
a hearing officer cannot refuse to consider an inmate's evi-
dence simply because other evidence supports a finding of
guilt.

The issue here is not whether Officer Bynum's conduct report provided a sufficient basis to find Ellison guilty, since a hearing officer's decision need only rest on "some evidence" logically supporting it and demonstrating that the result is not arbitrary. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). But when a prisoner contends that he was denied access to evidence necessary to defend against a disciplinary charge, his claim is properly understood as "one of procedural due process rather than sufficiency of the evidence." *Viens v. McDaniel*, 871 F.2d 1328, 1336 n.2 (7th Cir. 1989).

Ellison was entitled to present evidence refuting Officer Bynum's conduct report, and given the conflict between that report and the location of the heroin identified on the photo, the hearing officer's refusal to permit Ellison to exercise that right is particularly troubling. *See Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002); *Meeks v. McBride*, 81 F.3d 717, 721 (7th Cir. 1996). The hearing officer could not have known whether Officer Bynum erred in labeling the photo or the conduct report, and that is precisely why Ellison's explicit request to have Bynum present at the hearing should have been honored. Ellison also was entitled to have his written request to call Officer Dorethery honored; testimony from Dorethery that he searched Ellison's cell with help from a guard other than Bynum would have directly undermined the validity of the conduct report. *See Meeks*, 81 F.3d at 720.

The hearing officer's treatment of the video is equally problematic: Her cursory statement that the video shows

*an officer* entering Ellison's cell misses the point, because unless it is *Officer Bynum* seen in the video going into Ellison's cell, the disciplinary case against Ellison falls apart. Given these errors—along with the respondent's failure to offer any explanation for the conflicting evidence or challenge Ellison's version of events—we conclude that Ellison was denied due process.

Because remand is necessary to correct these errors, we need not address Ellison's final challenge regarding the reliability of the test results identifying the substance as heroin. We note, however, that the record contains nothing more than an e-mail to the hearing officer stating that the substance "did test positive" with no information about who performed the test, the type of test which was used, or the chain of custody. Administrative decisions resting on chemical analysis typically require both the test results and a chain of custody linking those results to the particular prisoner. *Webb*, 224 F.3d at 652–53. Perhaps chemical testing would've been superfluous had Officer Bynum testified that, based on his training and experience, he recognized the substance as heroin, *United States v. Sapanaw*, 366 F.3d 492, 496 (7th Cir. 2004), but given that he didn't testify, Ellison was essentially required to accept the hearing officer's word that the substance was actually tested.

Ellison is entitled to a disciplinary hearing comporting with *Wolff* or else his good time must be restored. Accordingly, the district court's decision is VACATED, and the case is REMANDED for further proceedings.