NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 31, 2017[*]
Decided November 3, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1697

| | |
|---|---|
| JAMES E. MANLEY, | Appeal from the United States |
| *Petitioner-Appellant,* | District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | |
| | No. 1: 16-cv-02586-JMS-DML |
| KEITH BUTTS, | |
| *Respondent-Appellee.* | Jane E. Magnus-Stinson, *Chief Judge*. |

**O R D E R**

A hearing officer found that inmate James Manley had possessed methamphetamine at New Castle Correctional Facility in Indiana. Manley was stripped of 90 days' good-time credit, demoted to a lower credit-earning class, and temporarily denied commissary and phone privileges. He challenged these sanctions by petitioning for a writ of habeas corpus, see 28 U.S.C. § 2254, which the district court denied. Manley appeals that decision. We affirm the judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. See FED. R. APP. P. 34(a)(2)(C).

Manley was housed in segregation when he requested that prison staff retrieve religious items from his property box, which was stored outside his cell. That task fell to Lieutenant L. Storms, who searched the property box without Manley being present. What the lieutenant found, according to a Report of Conduct he drafted afterward, was "a clear bottle with a red lid with a suspicious clear/white rock like substance inside." Internal Affairs conducted a field test and told Storms the white rocks had tested positive for methamphetamine. In his Report of Conduct, Storms charged Manley with possessing a controlled substance. Another guard provided a written statement corroborating that Storms had removed the bottle from Manley's property box.

Manley was notified that a disciplinary hearing would be conducted on the Report of Conduct. He submitted a written statement accusing Lt. Storms of planting the methamphetamine in retaliation for a grievance that Manley had lodged against Storms. Manley insisted he had not accessed his property box since being moved to segregation two months earlier. The only rock-like substance that could have been in the property box, Manley said, was sea salt used for religious purposes.

Along with his statement, Manley submitted a proposal that the white rocks be tested by a lab and that, if the substance was confirmed to be methamphetamine, he should be charged with a crime in lieu of the disciplinary case. He also asked that four prison employees be available to testify at the hearing. Manley wanted a grievance specialist to confirm that he had filed a grievance against Lt. Storms just a few days before the search of his property box. He also wanted his case manager and the warden to verify that he had accused Storms of retaliation and had asked that Storms be kept away from him. And he wanted Storms to explain why he searched the property box. In addition, Manley requested that administrative staff produce all records from his drug testing at New Castle, along with an evidence log showing the chain of custody for the white rocks, the credentials of the Internal Affairs staff member who conducted the field test, and publications addressing the "statistical reliability" of that testing method.

The hearing officer concluded that live testimony from Lt. Storms was unnecessary because the lieutenant's reason for searching Manley's property box was apparent from the Report of Conduct. And neither were the other proposed witnesses needed, the hearing officer continued, because their proposed testimony would be irrelevant. The hearing officer further rejected Manley's other evidentiary requests, calling them unreasonable. He did give Manley the name of the field test and placed a copy of the test results in the administrative record. But he declined to seek laboratory

analysis. The hearing officer then heard testimony from Manley but found him guilty based on staff reports, the field test, and pictures of the white rocks.

Indiana prison inmates have a liberty interest in their good-time credits and credit-earning class and must be afforded due process before either can be taken away for misconduct. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003). An inmate's right to due process is satisfied if he receives a hearing conducted by an impartial decision maker; notice of the charge at least 24 hours before that hearing; an opportunity to present evidence, including witnesses; and a written explanation for the discipline. *Wolff v. McDonnell*, 418 U.S. 539, 564–73 (1974); *Piggie*, 344 F.3d at 677. That explanation must be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011).

In his section 2254 petition, Manley essentially claimed that he did not receive *any* of the *Wolff* protections before being disciplined. He also insisted that he was denied due process on the ground that Lt. Storms had issued the Report of Conduct in retaliation for a grievance. The district judge rejected these contentions, and on appeal Manley has narrowed his focus. In this court he simply contends that the hearing officer denied him due process by refusing his proposed evidence without any explanation.

To say that the hearing officer neglected to provide *any* explanation is inaccurate. And though Manley is dissatisfied with the terse reasons given for not allowing his requested evidence, it was enough for the hearing officer to give *some* explanation. See *Ponte v. Real*, 471 U.S. 491, 497–99 (1985). Irrelevance is the principal reason given by the hearing officer, and, indeed, *Wolff* does not recognize an unqualified right to present evidence at a disciplinary hearing. Evidence that is wholly irrelevant or repetitive may be excluded. *Scruggs v. Jordan*, 485 F.3d 934, 939–40 (7th Cir. 2007); *Piggie*, 344 F.3d at 677.

The hearing officer's concern about relevance was well-founded. Lt. Storms aside, Manley's three other proposed witnesses would have done nothing to advance his contention that Storms planted the drugs. Those witnesses presumably could have verified that Manley had formally complained about Storms and given the lieutenant a reason to retaliate, but Manley's grievance history (or even Storms's knowledge about being named in a grievance) was not in dispute. And as for Storms himself, Manley's only reason for wanting to call the lieutenant was a hope that under cross-examination he would recant his Report of Conduct. But Manley did not have an absolute right to

cross-examine Storms at the disciplinary hearing. See *Wolff*, 418 U.S. at 567–69; *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).

Lack of relevance also was a sound basis for the hearing officer's rejection of Manley's demand that all records from his previous drug tests at New Castle be admitted in evidence. As Manley acknowledges in his brief, the hearing officer did not dispute his account of being drug-free at the prison. Thus, padding the administrative record with documents proving an undisputed fact would have been pointless. As the hearing officer recognized, an inmate can possess and deal drugs without using them.

As for Manley's other requests, the hearing officer identified the type of field test conducted and gave him a copy of the test results, which includes information about the chain of custody of the bottle and white rocks. And Manley was not entitled to demand laboratory testing and publications about the reliability of the particular field test, just as the hearing officer implied by calling those demands unreasonable. Prison administrators are not obligated to create favorable evidence or produce evidence they do not have. Without a specific reason to doubt the field test—and no reason was suggested by Manley—the hearing officer could rely on the results of the field test. See *Ellison*, 820 F.3d at 275 (noting, in prison-discipline context, that guard's lay identification of substance might be sufficient depending on guard's training and experience); *United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004) (concluding that, even in criminal cases, "neither expert testimony nor a chemical test of the substance" is necessary to prove that substance is prohibited); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898–99 & n.3 (5th Cir. 2000) (concluding that results of field test of controlled substance satisfied "some evidence" standard).

AFFIRMED.