**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 29, 2018[*]
Decided June 4, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2891

| | |
|---|---|
| RICKY N. ALEXANDER, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 14-cv-849 |
| RICHARD A. RASMUSSEN, et al., *Defendants-Appellees.* | **James D. Peterson**, *Chief Judge.* |

**O R D E R**

Ricky Alexander, a Wisconsin prisoner, sued prison officials for violating his rights to due process and equal protection while investigating and disciplining him after he battered another inmate. The district court dismissed his due process claim at screening. It later entered summary judgment for prison officials on the equal protection claim after they showed that Alexander failed to exhaust his administrative remedies. We affirm the judgment because Alexander received all of the process that he was due and did not exhaust his administrative remedies on his equal protection claim.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Alexander and another inmate, Benjamin Kamedulski, brawled in February 2013; their written accounts of who provoked whom differ. According to Alexander, after he received a haircut, Kamedulski warned Alexander that he (Kamedulski) would hurt Alexander if he got any hair on Kamedulski. While holding a chair, Alexander then walked past Kamedulski, who grabbed and choked Alexander. Fearing for his life, Alexander struck back. Kamedulski's story was different: When Alexander approached him with hair all over his shirt, he told Alexander to stop. Alexander nevertheless came closer, though. Kamedulski repeated his warning, and he added that if Alexander got hair on him, he would hurt Alexander. Alexander then deliberately rubbed hair clippings on Kamedulski, who tried to push Alexander away. They both ended up on the floor, with Alexander beating Kamedulski.

A correctional officer investigated the incident. He found Kamedulski with significant injuries to his face, consistent with being a victim of battery. (Alexander himself submitted evidence of Kamedulski's injuries: a broken jaw and fractures of the cheek bone, eye socket, and temple plate.) The officer placed Alexander in temporary lockup, examined Alexander's hands, and noticed that some of his knuckles were swollen. He opined in a prehearing report that it was "more likely than not" that Alexander battered Kamedulski.

About a month later, Lieutenant Richard Rasmussen held a hearing and found Alexander guilty of battery. He was ordered to spend 240 days in restrictive housing and to pay for Kamedulski's medical bills. Rasmussen referred Alexander to the Program Review Committee, which ultimately led to his transfer to a more secure facility. Alexander did not lose any good-time credit, however, nor did the prison alter the rate at which he accrued credit.

Alexander filed five grievances challenging the disciplinary process. The first four did not mention race discrimination. The fifth came a year and a half after the disciplinary ruling. In it, Alexander, who is African American, wrote that prison officials violated his "right to equal protection of law and racial discrimination." He complained that they charged him, "the African American inmate … with battery and failed to charge the white Caucasian inmate … with any disciplinary action, although the white inmate initiated the altercation." The prison rejected all of the grievances.

This lawsuit for violations of due process and equal protection came next. Alexander argued that the investigating officer violated his due process rights by not including in his prehearing report Alexander's or Kamedulski's written statements. (Alexander thought, incorrectly, that Kamedulski had admitted to being the first aggressor.) The district court dismissed the complaint, reasoning that Alexander

received the process that he was due and insufficiently pleaded a violation of equal protection. The court later agreed to reinstate the discrimination claim as adequately pleaded but agreed with the defendants that Alexander had failed to exhaust his administrative remedies on that claim, resulting in the entry of summary judgment against him.

On appeal, Alexander attacks the district judge's dismissal of his due process claim, but we are not persuaded. We assume for purposes of argument that the prison deprived him of protected liberty or property interests by placing him in segregation and ordering restitution. The placement in segregation altered his conditions of confinement, not the duration. A suit challenging conditions of confinement is possible under 42 U.S.C. § 1983 for a due-process violation, as distinct from a habeas corpus petition under 28 U.S.C. § 2254, which would be required if his discipline had included the loss of good-time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974). Due process would entitle Alexander to advance notice of the charge against him, a hearing before an impartial decision maker, a chance to present evidence, and an explanation of the ruling against him, *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007), as well as "some evidence" supporting the decision. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Alexander contends that he was denied due process because his and Kamedulski's statements were excluded from the prehearing report. But he points to no exculpatory information in those statements that was not available to him at the hearing. *See Donelson v. Pfister*, 811 F.3d 911, 917–18 (7th Cir. 2016) (concluding that prison officials need not allow irrelevant, repetitive, or unnecessary evidence). Alexander was present at the hearing and could offer his own statement at the hearing itself. And Kamedulski's statement was not exculpatory. Although Alexander thinks that Kamedulski admitted in his statement that he, not Alexander, was the aggressor, he did not. Exclusion of Kamedulski's statement was harmless. *See id.*

Alexander also challenges the district judge's conclusion that he did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) on his race-discrimination claim for denial of equal protection of the laws. He first argues that Wisconsin prohibits him from filing a grievance about a disciplinary decision. But the text of the Wisconsin Administrative Code contradicts his argument. It provides a two-step process for asserting a challenge to a disciplinary decision. First, within 10 days of receiving the decision an inmate may appeal it to the warden. WIS. ADM. CODE DOC § 303.82(1). Second, if not satisfied with the result of the appeal, the inmate has 14 days to grieve the disciplinary ruling through the Inmate Complaint Review System. WIS. ADM. CODE DOC § 310.06(2)(b), 07. Because Alexander took 18 months to initiate his race-discrimination grievance, he did not timely exhaust these remedies.

Recognizing that he did not timely exhaust his administrative remedies, Alexander offers two reasons that we should excuse his failure. First, he asserts that the hearing examiner told him only about the right to appeal to the warden, not the additional right to grieve through the Inmate Complaint Review System. Prison officials may not actively mislead a prisoner about completing an exhaustion requirement. *Swisher v. Porter Cty. Sheriff's Dept.*, 769 F.3d 553, 555 (7th Cir. 2014). But Alexander offers no evidence that the examiner lied to him and told him that filing a grievance was unnecessary. Nor does he assert that he had never received information from the prison about the Inmate Complaint Review System. This argument does not justify the failure to exhaust administrative remedies.

Second, Alexander argues that he is excused from timely exhausting administrative remedies because, he says, he did not learn until 18 months after the disciplinary ruling that the prison had not punished Kamedulski; once he learned of the disparate treatment, he filed his grievance. Although an inmate can be excused from an exhaustion requirement when events make it impossible to comply, *see Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011), Wisconsin requires that prisoners show "good cause" to prison officials for a late grievance, WIS. ADM. CODE DOC § 310.07(2). And here, Alexander did not provide to those officials *any* reason for filing his grievance more than a year and a half after his disciplinary hearing. The reason that he raises now he pressed for the first time in the district court, but that was too late; he was required to provide the explanation to the officials processing grievances. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015) (noting that a prisoner must complete the grievance process even if he expects it to be futile). Moreover, Alexander has not supported this excuse with a sworn statement. Therefore we have no reason to disagree with the district court that Alexander failed to exhaust his administrative remedies.

AFFIRMED.