**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2020[*]
Decided October 23, 2020

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-1121

| | |
|---|---|
| GARY MILLER, JR., | Appeal from the United States District |
| *Petitioner-Appellant,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | No. 1:19-cv-1194-SEB-MJD |
| MARK R. SEVIER, | Sarah Evans Barker, |
| *Respondent-Appellee.* | *Judge.* |

**O R D E R**

After Gary Miller, Jr., left his bunk while a count of inmates was in progress, a disciplinary hearing officer found him guilty of violating a prison rule that bars interfering with the count. He was sanctioned with a loss of good-time credit. Miller has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that his due-process rights were violated because the officer's decision was not supported by sufficient evidence. Based on the evidence that Miller left his bunk during the count, the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

district court correctly determined that "some evidence" supports the discipline, so we affirm.

Miller is incarcerated at Indiana's New Castle Correctional Facility, which enforces rules that enable it to count its inmate population four times daily. In June 2018, prison officials gave inmates a memo explaining that they are restricted to their bunks once a count begins and may not visit the dayroom or use the microwave until officials announce the end-of-count signal. The memo warns that inmates violating this procedure will be disciplined under a standing rule that prohibits "[f]ailing to stand count, being late for count, or interfering with the taking of the count."

The next month, Miller was charged with interfering with the count when a prison guard discovered him in the dayroom using the microwave before the official end-of-count signal. Miller pleaded not guilty. At his hearing, Miller explained that, although he left his bunk, he genuinely thought the count was over because "someone yelled out count was clear." Miller submitted three witness statements; each stated that Miller left his bunk before the official end-of-count signal after an inmate or inmates had jokingly shouted, "count clear." The hearing officer considered the conduct report, Miller's statement, the witness statements, and the count-procedures memo and found that Miller had interfered with the count. The officer sanctioned Miller with a loss of 30 days of good-time credit and 30 days of commissary and telephone privileges.

Miller petitioned in federal court to challenge his discipline. The district court denied Miller's petition because, it concluded, "some evidence" supported the finding of a violation, thereby comporting with due process. It observed that the conduct report and witness statements established that Miller used the dayroom and microwave before the official end-of-count signal, contrary to instructions in the issued memo.

On appeal, Miller argues that the prison violated his due-process rights because the hearing officer had insufficient evidence to conclude that Miller interfered with the count. The requirements of due process are satisfied when "some evidence" supports a disciplinary decision, *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985), and such evidence is present here. Miller admits, and the conduct report and witness statements show, that he left his bunk to use the dayroom and microwave before officials announced the end-of-count signal. Also, Miller had received the memo explaining that prisoners interfere with the count by leaving their bunks before officials announce the end-of-count signal. Even if that memo exempted inmates who misinterpret a fellow

inmate's call as the official one (an exemption that does not appear in the memo), the hearing officer was not required to believe that Miller genuinely thought that the count was over. The evidence therefore was sufficient to find him guilty. *See Donelson v. Pfister*, 811 F.3d 911, 916 (7th Cir. 2016) (any evidence of petitioner's guilt satisfies the some-evidence standard).

Miller responds that, even though he used the dayroom's microwave before the end-of-count signal, the prison needed to produce evidence that he actually prevented officers from counting inmates to find him guilty under the rule. The prison's memo, however, clarifies that a prisoner violates the no-interference rule precisely by using the dayroom or microwave before the end-of-count signal. Prisons have "broad discretion to implement rules assuring the safety of inmates and staff," *Scruggs v. Jordan*, 485 F.3d 934, 940 (7th Cir. 2007), and the prison's implementation of this rule was reasonable.

AFFIRMED