NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 26, 2021[*]
Decided March 26, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-2079

| | |
|---|---|
| OSCAR PEREZ, <br>     *Petitioner-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:19-cv-00401-JRS-MJD |
| ROBERT CARTER, <br>     *Respondent-Appellee.* | James R. Sweeney II, <br> *Judge*. |

**O R D E R**

Oscar Perez, a prisoner at the Wabash Valley Correctional Facility in Carlisle, Indiana, during the relevant period, brought a petition under 28 U.S.C. § 2254 challenging a disciplinary conviction. The parties agree that the disciplinary hearing officer violated his due process rights by failing to secure the in-person testimony of an allegedly exculpatory witness whose presence Perez had properly requested. The

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

district court, however, denied Perez's petition on the ground that the violation did not prejudice him and was therefore harmless. Because Perez did not explain how the live testimony could have changed the outcome, we affirm.

Perez was charged in a conduct report with violating an Indiana Department of Correction rule prohibiting unauthorized financial transactions. *See* IND. DEP'T OF CORR., MANUAL OF POL'YS & PROCS., No. 04-01-104, § IX. That provision precludes "the discussion of engaging in unauthorized transaction(s) with any other person." *Id.* No. 02-04-101, App. I, § 220. The charge resulted from three phone calls that Perez placed to a woman outside of the facility over the course of four days. The conduct report characterized the dialogue as "discussing unauthorized financial transactions."

During the first phone call, Perez asked the woman to send a message to a phone number associated with another inmate, Ulises Ledo. He directed her to say that she was "hollerin at em for Ole' man" and to "ask them for the same thing" as "last time." Two days later, the woman told Perez that she received a reply "asking for details and stuff." The following day, the woman told Perez, "Dude, you need to tell your people um, they, they got really rude with me." When Perez asked what happened, she replied, "They cussed me out practically. They was like 'Hey yo, next time you send me money, send me the f-ing name.'" She continued saying, "And I don't even know who sent the money." After Perez asked, "Didn't ask Sally?" the woman replied, "No, I mean I did ask Sally but by that time they already had the money."

On his disciplinary hearing notice, Perez identified Ledo as a witness he wished to call. Ledo did not testify, however, and no record, including the hearing officer's report, explains Ledo's absence. The hearing officer did, however, consider a written statement from Ledo that said: "As far as I'm aware Mr. Perez did not send me any money."

At the disciplinary hearing, Perez testified that the third call, the only one in which anyone explicitly mentioned money, was not connected to the previous two but instead was about family issues. He pointed out that he never asked the woman to send money and that the third call shows she never did, on his or anyone else's behalf. After considering the conduct report, Perez's statements, the phone logs, and Ledo's written statement, the hearing officer found Perez guilty and sanctioned him with, among other penalties, the loss of 45 days of good-time credit.

After his appeals were denied, Perez filed a petition for habeas corpus under § 2254, alleging that his due process rights were violated because insufficient evidence

supported the disciplinary officer's findings, his witness was not present to testify in person, and the hearing officer was not impartial. The district court denied the petition. It concluded that the hearing officer's decision was not arbitrary because the phone conversations provided "some evidence" of Perez's guilt, *see Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016), and that there was no evidence that the decisionmaker was biased. The court further concluded that the hearing officer erred by finding Perez guilty without explaining why Ledo was not called as a witness. Carter raised a harmless-error argument, and because Perez did not show that the testimony would have gone beyond Ledo's written statement, the court found that he had not shown the required prejudice.

On appeal, Perez challenges only the district court's conclusion that not procuring Ledo's in-person testimony was a harmless error, and therefore we review only this portion of the court's decision. *See United States v. Webster*, 775 F.3d 897, 904 (7th Cir. 2015). Indiana prisoners may not be deprived of good-time credits without due process. *Ellison*, 820 F.3d at 274. This includes the right to call a witness during a disciplinary hearing. *Id.*; *Whitlock v. Johnson*, 153 F.3d 380, 385 (7th Cir. 1998) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). But an erroneous decision to deny witness testimony is subject to harmless-error review, so the aggrieved prisoner must demonstrate that the deprivation prejudiced his defense. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011).

In his opening brief, Perez asserts that he was prejudiced by not being able to develop Ledo's testimony at the hearing. As he did in the district court, he contends that Ledo would have clarified the content of the text message that Perez asked the woman to send to the phone number associated with Ledo in the first conversation. But Perez provides no details or any explanation of how such a clarification could have exculpated him.

As Carter concedes, a written statement is not an equal substitute for in-person testimony, so denying a live witness without explanation violates the due process requirements articulated in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *See Ponte v. Real*, 471 U.S. 491, 497 (1985); *Whitlock*, 153 F.3d at 388–89. *Wolff* holds that calling witnesses should be allowed if it "will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566. But, Carter argues, the error was harmless because Ledo's testimony could not have changed the outcome. Assuming that Ledo would have again denied receiving money from Perez, Carter says the denial is irrelevant

because Perez's mere discussion of a transaction, as described in the conduct report, is enough to sustain a conviction. *See Jones*, 637 F.3d at 847.

In reply, Perez elaborates that Ledo would have testified that Perez was not discussing sending money in the first two calls; he was facilitating communication between Ledo and his family as they attempted to send him a care package. But, despite having been prompted to demonstrate prejudice, Perez did not offer this explanation to the district court, or in his opening brief, and so this argument is waived. *Henry v. Hulett*, 969 F.3d 769, 787 (7th Cir. 2020) (en banc). Further, Perez could have given that explanation himself at the disciplinary hearing. Instead, he testified without explanation that the first two calls were not related to the third call mentioning money.

Based on the bare argument that Ledo would have "clarified" Perez's communications, the district court did not err in concluding that any error by the hearing officer was harmless. A showing of prejudice turns on the details that the inmate provides about the unpermitted testimony. *Compare Piggie v. Cotton*, 344 F.3d 674, 677–78 (7th Cir. 2003) (no prejudice when there was no indication what the testimony would have been), *with Donelson v. Pfister*, 811 F.3d 911, 918 (7th Cir. 2016) (prejudice shown when inmate explained that the witness would have testified about the specifics of his interaction with a corrections officer), *and Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002) (prejudice shown when inmate said two corrections officers would have testified that during a search they saw another officer open a package that the inmate allegedly opened). Perez gave the district court nothing approaching the descriptions of the missing testimony that the inmates provided in *Donelson* and *Pannell*. Having found that there was "some evidence" that Perez discussed an unauthorized financial transaction, and without any explanation of how Ledo would have refuted that finding, the district court did not err in deeming the absence of Ledo's live testimony harmless. And Perez has yet to rebut the argument that, because he could be found guilty simply for discussing an unauthorized financial transaction—and he has not argued on appeal that this interpretation of the calls is unsupported—Ledo could say nothing that would change the outcome.

AFFIRMED